David Edward LOVELESS, Appellant,

v.

STATE of Alaska, Appellee.

No. 3320.

Supreme Court of Alaska.

March 30, 1979.

---

Sue Ellen Tatter, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

Peter A. Michalski and Glen C. Anderson, Asst. Attys. Gen., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER,. C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

David Edward Loveless was convicted of second degree murder after a jury trial.[1]

He was initially sentenced to life imprisonment with parole eligibility in ten years, but the sentence was subsequently amended to increase the minimum time to be served to fifteen years. Loveless appeals the judgment of conviction and the imposition of the amended sentence.

On the evening of August 30, 1974, Loveless, Allen Hanson, and several other men were in the Ship's Bar in Kodiak. Loveless and Hanson engaged in several arm-wrestling matches which Hanson won. The two later walked to the bar's vestibule, where at approximately 11:00 P.M., Hanson was fatally shot. No one but Loveless saw the shooting, but immediately afterward Loveless was seen walking away from the bar, shoving a gun into his belt or pants. It was revealed at trial that Hanson had been shot in the face at a range of less than twelve inches.

Loveless was arrested and taken into custody at approximately 2:00 A.M. on August 31st. The police feared that he was suicidal and called Dr. William McIver, a clinical psychologist, to the jail for the purpose of conducting a psychological examination. The examination took place in Loveless's cell, commencing at approximately 3:20 A.M. and lasting for forty-five minutes. No Miranda[2] warning was given. Dr. McIver later made a written report of his findings.

Loveless was subsequently indicted for first degree murder.[3] At trial, Loveless testified in his own defense. He admitted the shooting, but contended that it had occurred accidentally when Hanson grabbed the gun while Loveless was showing it to him. The defense also contended that Loveless had been too intoxicated to be

---

1. AS 11.15.030 provides: "Except as provided in §§ 10 and 20 of this chapter, a person who purposely and maliciously kills another is guilty of murder in the second degree, and shall be sentenced to imprisonment for a term of not less than 15 years to life."

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. AS 11.15.010 provides:

    A person who, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate, rape, arson, robbery, or burglary kills another, is guilty of murder in the first degree, and shall be sentenced to imprisonment for not less than 20 years to life.

capable of forming an intent to commit murder on the night of the crime.

At trial, Dr. Joseph Bloom, a psychiatrist, was called as an expert witness on the subject of Loveless's psychiatric makeup. He testified that at the time of the crime Loveless's judgment and thinking processes had been sufficiently impaired by alcohol so as to prevent him from formulating the intent to commit murder.[4] Implicit in Dr. Bloom's conclusion in this regard was his acceptance of Loveless's contention that he had been intoxicated when Hanson was killed, because Dr. Bloom also testified that Loveless suffered no permanent diminishment of capacity although he did exhibit signs of personality disorder.

Over the objection of the defense counsel, the state was allowed to call Dr. McIver as a rebuttal witness. The court limited the scope of his testimony by ruling that he could not reveal any statements made by Loveless concerning the events surrounding the crime. Dr. McIver testified that at the time of the jailhouse examination a few hours after the crime, Loveless had exhibited no signs of intoxication, that his mental faculties had been unimpaired, and that, in general, Loveless had exhibited no signs of mental disease or incapacity. He also testified that Loveless had undergone two epileptic seizures which, in the psychologist's opinion, were "faked".

Loveless contends on appeal that the admission of Dr. McIver's testimony violated his privilege against self-incrimination[5] because the jailhouse examination had been conducted without a *Miranda* warning. Although he recognizes that no statements directly relating to the shooting were admitted, Loveless contends that since Dr. McIver's testimony pertained to his capacity to form intent it was directed at the issue of guilt and should therefore have been excluded.

The appellant's contention is ill-founded, because the privilege against self-incrimination extends only to testimonial evidence.[6] Our examination of the trial transcript reveals that on direct and re-direct examination, Dr. McIver's testimony was carefully limited to a description of Loveless's conduct at the time of the interview and to the psychologist's conclusions regarding his mental status at that time. The conclusions were based on Dr. McIver's observations and on Loveless's responses to verbally administered questions which were designed to test his mental faculties and which were unrelated to the crime. We find therefore that the evidence elicited from the appellant was of the nature of "real" or non-testimonial evidence to which the right against self-incrimination does not attach.[7]

4. Dr. Bloom's conclusions concerning Loveless's psychiatric profile were based on his examinations of the defendant, Loveless's police record, records made by an Ohio hospital where Loveless had previously received psychiatric treatment, and the record of psychological tests conducted on Loveless at the Kodiak hospital where he was treated a few days before the crime. He also read Dr. McIver's report, but he evidently considered it to be of little value.

5. U.S.Const. Amend. V provides in part: "No person shall . . . be compelled in any criminal case to be witness against himself . . . ." The right was held enforceable against the states in *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

A similar provision is found in the Alaska Constitution. "No person shall be compelled in any criminal proceeding to be a witness against himself." Alas.Const. art. I, § 9.

6. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

7. We do not hold that the *Miranda* requirement would not require exclusion of testimonial evidence revealed by the defendant during the jailhouse psychological examination. Dr. McIver could not properly have testified to any statements made by Loveless that would indicate that he had been involved in the killing or that he had actually entertained an intent to kill (as opposed to having the capacity to form intent). Given the circumstances of the interview, Dr. McIver was so closely related to the "police team" that any questioning he conducted concerning the crime should only have occurred after a *Miranda* warning. *See State v. Corbin*, 15 Or.App. 536, 516 P.2d 1314 (1973). Likewise, we do not hold that a psychiatric examination may be compelled unless the accused first raises an insanity defense.

The appellant relies on the nature of the examination, which was primarily a verbal exchange, and on the fact that some remarks that Loveless had made were revealed by Dr. McIver's testimony. This does not render the evidence testimonial in nature, however. The responses Loveless made were important not for their content but only as a means of ascertaining his mental state. Indeed, with minor exceptions, the contested evidence consisted solely of the test results. The few remarks by Loveless that were revealed were unrelated to the crime and were used to illustrate the basis of some of Dr. McIver's conclusions. They constitute "verbal acts" and were therefore properly admitted.[8]

The appellant also contends that conducting the psychological examination without affording him the opportunity to have an attorney present violated his constitutional right to counsel. We do not agree. Unlike the privilege against self-incrimination, the right to counsel provided by the sixth amendment[9] attaches only after formal charges have been filed. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Although we are not limited to the scope of the sixth amendment when construing the right to counsel provided by our state constitution,[10] when we have provided a broader right in the past we have done so only to protect the accused during proceedings that are investigatory in nature and which are conducted in an adversary context.[11] The rationale of requiring presence of counsel at such proceedings does not extend to pre-indictment physical or psychological examinations which are conducted where the welfare of the prisoner is a significant factor.[12]

The appellant also contends that the use at trial of a written report prepared by Dr. McIver constituted reversible error. The contention is based on an assumption that both the original examination and the report violated AS 12.45.087(a)[13] and that

---

8. *See, e. g., United States v. Baird,* 414 F.2d 700, 708–09 (2d Cir. 1969); *State v. Whitlow,* 45 N.J. 3, 210 A.2d 763 (1965).

9. U.S.Const. Amend. VI provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." The right was made enforceable against the states in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

10. Alas.Const. art. I, § 11 provides: "In all criminal prosecutions, the accused shall have the right . . . to have the assistance of counsel for his defense."

11. In *Blue v. State,* 558 P.2d 636 (Alaska 1977), we held that the Alaska Constitution provides the right to counsel during pre-indictment identification lineups, in the absence of exigent circumstances. In *Roberts v. State,* 458 P.2d 340 (Alaska 1969), we held that presence of counsel was required, unless waived, when handwriting exemplars are taken after indictment and appointment of counsel. We distinguished *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), which held that the federal right to counsel did not attach to the taking of handwriting exemplars taken after arrest but before charges had been filed or counsel appointed.

12. Dr. McIver testified that when he conducted the examination he was aware that his report might be used as evidence of Loveless's mental status and criminal responsibility, and that this motivated his examination as well as his professional responsibility for Loveless's well-being. However, the record reveals no evidence that the examination was conducted primarily for investigatory purposes or that it would have been conducted in the absence of a justified concern for Loveless's well-being.

13. AS 12.45.087(a) provides:

If a defendant has filed a notice of intention to rely on the defense of mental disease or defect excluding responsibility, or there is reason to doubt his fitness to proceed, or there is reason to believe that mental disease or defect of the defendant will otherwise become an issue in the cause, the court shall appoint at least one qualified psychiatrist or shall request the superintendent of the Alaska Psychiatric Institute to designate at least one qualified psychiatrist, which designation may be or include himself, to examine and report upon the mental condition of the defendant. The court may order the defendant to be committed to a hospital or other suitable facility for the purpose of the examination for not more than 60 days or such longer period as the court determines to be necessary for the purpose and may direct that a qualified psychiatrist retained by the defendant be permitted to witness and participate in the examination.

the report and Dr. McIver's testimony were therefore inadmissible under Criminal Rule 26(g), which provides that "[e]vidence illegally obtained shall not be used for any purpose including the impeachment of a witness." The contention is without merit. The examination was properly authorized under AS 33.30.130(a),[14] and the evidence was therefore legally obtained. Although the report could not have been used to reveal testimonial evidence, it was not itself admitted into evidence and its use on cross-examination revealed only non-testimonial information.

■ The appellant's final contention concerning the use of Dr. McIver's testimony is that it violated the psychotherapist-patient privilege that we recognized in *Allred v. State,* 554 P.2d 411 (Alaska 1976). The contention is meritless. Dr. McIver testified only to his conclusions concerning Loveless's mental condition at the time of the examination. This was put in issue by the defendant when he raised the diminished capacity defense. Thus if the psychotherapist-patient privilege existed in the relationship between Dr. McIver and Loveless, it was waived.[15]

One of the men who had been in the Ship's Bar on the night of the shooting identified himself as James Evans. He made a statement to the police and later testified before the grand jury, but the prosecution was unable to locate him for purposes of testifying at trial.[16] The prosecutor, after first establishing that Loveless had read a transcript of Evans's testimony before the grand jury, asked him:

> On August the 29th, Mr. Loveless, did you tell Mr. Evans that you wanted to buy a .38 he had because you had a job to do?

Loveless emphatically denied this. The prosecutor then, in the presence of the jury, gave Loveless a copy of the grand jury transcript and asked him to read to himself a portion of Evans's testimony there. The court admonished the prosecutor, that "you cannot get into what is in here as to what this gentleman [Evans] said. . . ." After Loveless had silently read the transcript, the prosecutor asked: "Is that a fair statement of what occurred?" Again Loveless made a denial. Not satisfied with this, the prosecutor asked: "But in any event you never went to the Beachcomber and asked Mr. Evans if you . . . you had a .38 and you had a job to do?" Loveless again answered in the negative.

■ Loveless contends that this use of Evans's grand jury testimony violates his right to confront his accusers.[17] We enunciated the purposes of the right to confrontation in *Lemon v. State,* 514 P.2d 1151 (Alaska 1973):

> This right of confrontation protects two vital interests of the defendant. First, it guarantees him the opportunity to cross-

14. AS 33.30.130(a) provides:
   The commissioner of public safety shall provide for the subsistence, care and safekeeping in suitable quarters of a person arrested or held under the authority of state law pending arraignment or commitment by a court to the custody of the commissioner of health and social services or to the custody of the keeper or person in charge of a prison facility designated in advance by the commissioner of health and social services.

15. We recently held that the psychotherapist-patient privilege recognized by this court in *Allred v. State,* 554 P.2d 411 (Alaska 1976), is waived when the defendant raises an insanity defense at trial. *Post v. State,* 580 P.2d 304 (Alaska 1978). "When one claims to be insane in a public trial, however, the humiliation which may be associated with the exposure of one's inner self is disregarded in order to achieve another end, and the basis for the psy-

chotherapist-patient privilege is largely eliminated." *Id.* at 307. This reasoning applies equally to a diminished capacity defense.

16. It appears that the appellation "James Evans" was an alias, and that the state failed to secure the correct identity or location of the witness.

17. U.S.Const. Amend. VI provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . .." The right was held applicable to the states in *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).
   The Alaska provision reads: "In all criminal prosecutions, the accused shall have the right . . . to be confronted with the witnesses against him . . .." Alas.Const. art. I, § 11.

examine the witnesses against him so as to test their sincerity, memory, ability to perceive and relate, and the factual basis of their statements. Second, it enables the defendant to demonstrate to the jury the witness' demeanor when confronted by the defendant so that the inherent veracity of the witness is displayed in the crucible of the courtroom.

*Id.* at 1153 (footnotes omitted). Both of these interests are implicated here. It was apparent to the jury that the prosecutor's questions were based on the statements of Evans given to the grand jury. Since Evans was not called to testify at the trial, Loveless never had the opportunity to challenge this testimony by cross-examination, or to place before the jury the demeanor of the witness.[18]

██ The state argues that at worst this conduct is harmless error. Where, as here, violation of a right guaranteed by the Federal Constitution is involved the error is harmless only if we believe beyond a reasonable doubt that the error did not influence the jury.[19]

We cannot declare such a belief in this case. The shooting was unwitnessed except by Loveless, who said it was accidental. The jury was instructed that the elements of second degree murder include a purposeful and malicious killing. There was some circumstantial evidence that the homicide was purposeful, such as the flight of Love-

less after the shooting,[20] but it was hardly overwhelming especially in view of the fact that the evidence established no motive for an intentional homicide. The jury was instructed that malice signified a wilful design to do another an unlawful injury. The record contains little or no suggestion of such a design, other than the prosecutor's remarks, attributed to the missing witness, that Loveless had said he needed a pistol because he had a job to do.

Our disposition of this issue makes it unnecessary to discuss the further points raised by Loveless. We note however, that we have considered them and have found no error which might have a bearing on the new trial Loveless is to receive.

REVERSED AND REMANDED.

RABINOWITZ, J., concurring.

CONNOR, J., concurring in part, dissenting in part.

RABINOWITZ, Justice, concurring in part, and dissenting in part.

Although I agree with the court's disposition of this appeal, I find I cannot agree with its rejection of Loveless' contention that admission of Dr. McIver's testimony violated his privilege against self-incrimination because the jailhouse examination had been conducted without a *Miranda* warning. I am of the view that the *Schmerber*[1] testi-

---

**18.** We also consider the prosecutor's conduct in this case to be a violation of the ethics of the legal profession. *See* A.B.A.'s Project on Standards for Crim. Justice, Standards Relating to the Prosecution Function (Tent. Draft, March, 1971), which provides in pertinent part:

Section 5.6(b):

It is unprofessional conduct for a prosecutor knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury.

Section 5.7(d):

It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner cannot support by evidence.

*See also* A.B.A. Code of Professional Responsibility, Ethical Canon 7–25:

[A] lawyer should not by subterfuge put before a jury matters which it can not properly consider.

**19.** *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**20.** We have previously noted our doubt that flight is of much probative value as evidence of guilt. *Bargas v. State,* 489 P.2d 130, 133 (Alaska 1971).

**1.** *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). As the Supreme Court itself noted in *Schmerber*: "Although we agree that this [testimonial/non-testimonial] distinction is a helpful framework for analysis, we are not to be understood to agree with past applications in all instances. There will be many cases in which such a distinction is not readily drawn." *Id.* 384 U.S. at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916.

monial test is not an appropriate basis for deciding the question where a psychiatric examination is involved. Rather, I think that Loveless' right to a *Miranda* warning must be defined by focusing on whether he could constitutionally have been compelled to submit to the tests and evaluation performed by Dr. McIver during the jailhouse interview.[2]

Where the accused has not as yet raised an insanity defense, courts have generally held that the state may not compel a psychiatric examination.[3] Similarly, where the question is not simply the sanity of the defendant but his dangerousness, and the issue is raised by the prosecution where the defense does not seek to introduce evidence on the issue, the defendant may not be compelled to participate in a psychiatric examination to determine dangerousness.[4] Thus, the relevant decisions appear to establish a general rule that the accused may not be compelled to undergo a psychiatric examination unless he first raises the sanity issue as a defense. Under this rule, Loveless could not have been compelled to undergo an examination by Dr. McIver if he had been made aware of his rights. Therefore, I conclude that Loveless should have been given the benefit of a *Miranda* warning in the present case.[5]

There is an additional reason that a *Miranda* warning should have been given in the case at hand, however. Even if Loveless had been willing to talk to the psychologist, he should have been made aware of the fact that his responses could be used against him on the issue of his sanity. In *State v. Corbin,* 15 Or.App. 536, 516 P.2d 1314, 1319 (1973), the court required the psychiatrist to personally give the *Miranda* warnings. In so holding, the court stated:

> The key reason for requiring that the psychiatrist repeat such a warning is to dispel any possibility that the defendant may believe that statements made to the psychiatrist would not or could not be used in court against him. The reasons for this possible misapprehension lie in the vagueness of what is protected by the confidentiality of the doctor-patient relationship. Even more compelling is the need to dispel any belief that statements made to the psychiatrist would be for the defendant's own good. The defendant must be aware that the psychiatrist is employed by his adversary and is not primarily his healer. *Cf. State v. Phillips, supra,* 245 Or. 466 at 471, 472, 422 P.2d 670. For these reasons we feel that as a matter of law a defendant must be warned that his *Miranda* rights apply to the psychiatric examination.[6]

I think it appropriate to note that implicit in the foregoing is my disagreement with the court's conclusion that what are in question here are "verbal acts" or non-testimo-

**2.** *Schmerber, id.* illustrates generally that where the state may constitutionally compel an accused to perform an act, it is not required that the accused be warned that he need not perform it.

**3.** *United States v. Baird,* 414 F.2d 700, 707 (2d Cir. 1969), *cert. denied* 396 U.S. 1005, 90 S.Ct. 559, 246 L.Ed.2d 497 (1970); *Thorton v. Corcoran,* 132 U.S.App.D.C. 232, 407 F.2d 695, 700 (1969); *United States v. Albright,* 388 F.2d 719, 724 (4th Cir. 1968). *See United States v. Malcolm,* 475 F.2d 420, 425 (9th Cir. 1973) (issue discussed in *dicta* but not reached in appeal court's holding since it was not raised in the district court below).

**4.** *Smith v. Estelle,* 445 F.Supp. 647, 663–64 (N.D.Tex.1977).

**5.** *See State v. Corbin,* 15 Or.App. 536, 516 P.2d 1314 (1973). There the court required

that a *Miranda* warning be given by the examining psychiatrist where the examination was conducted in the defendant's hospital room the day after the crime was committed.

**6.** This additional interest of the defendant in being informed that information obtained at the psychiatric interview may be used against him at trial would be protected in an examination ordered based on the defendant's decision to raise an insanity defense. By that stage in the proceedings, the accused has been made aware of his status, and presumably has been advised by counsel of the consequences of his choice. Nevertheless, I express no opinion here on the extent of any waiver of the privilege against self-incrimination which may be implied by the defendant's decision to raise the defense of insanity.

**1214**

nial evidence. The real evidence versus testimonial or communicative evidence distinction as articulated in *Schmerber* is in my view inappropriate in the context of a psychiatric examination, which inevitably involves the mental processes of the defendant in formulating the content of his responses to the psychiatrist. Even assuming arguendo the appropriateness of a *Schmerber* analysis, however, I would hold that, what Dr. McIver related as Loveless' responses to his questioning during the jailhouse interview should be characterized as testimonial evidence.

CONNOR, Justice, concurring in part, dissenting in part.

I agree with the opinion except that portion concerning the reference to the grand jury testimony of Evans. I think the prosecutor was entitled to ask Loveless whether he had made statements to other persons inconsistent with his testimony at trial.

From my review of the record it does not appear that the conduct of the prosecutor was devastating to the defense, that it had a crucial impact upon the defense, or that it would amount to reversible error.