683 P.2d 269 (1984)
STATE of Alaska, Petitioner,
v.
R.H. and Mitchell Wetherhorn, Respondents.
No. 7768.
Court of Appeals of Alaska.
June 1, 1984.
As Modified on Rehearing July 6, 1984.
*271 Elizabeth H. Sheley, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for petitioner.
Phillip Paul Weidner, and Linda R. MacLean, Drathman & Weidner, Anchorage, for respondent, R.H.
Gregory J. Grebe, Kelly, Luce & Grebe, Anchorage, for respondent, Mitchell Wetherhorn.
Donald N. Bersoff, Ennis, Friedman, Bersoff & Ewing, Washington, D.C., for amici curiae, American Psychological Association and Alaska Psychological Association.
Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION
SINGLETON, Judge.
The state petitions for review of an order of the superior court quashing a subpoena directing Dr. Mitchell Wetherhorn, a clinical psychologist, to appear before a grand jury. The grand jury is investigating charges that R.H., Dr. Wetherhorn's patient, sexually molested his daughter, S.H. The trial court found that any testimony Wetherhorn might give would be protected by the psychotherapist/patient privilege established in Alaska Evidence Rule 504.[1] *272 The state asks us to set aside the trial court's order, reasoning that the legislature abrogated the privilege in criminal child abuse cases through the enactment of AS 47.17.060.[2] Alternatively, the state argues that two exceptions to the evidentiary privilege are applicable to this case, Evidence Rules 504(d)(5) and (6).[3] We affirm the decision of the trial court.
The H. family has apparently been experiencing turmoil for some time. On February 1, 1983, fifteen-year-old S.H. ran away from home. She saw a counselor on February 4, and reported that she and her sixteen-year-old sister, D.H., had been sexually abused by their father, R.H.S.H. reported that the last incident of sexual abuse had occurred two years earlier. According to a report subsequently filed by the counselor, S.H. accused her father of sexually abusing her on numerous occasions from the time she was ten until she was thirteen years of age. The counselor reported the alleged abuse to the Division of Family and Youth Services (DFYS) pursuant to statute. AS 47.17.010-.070. On February 7, the DFYS prepared a written report alleging R.H.'s sexual abuse of S.H. The report was sent to the offices of the district attorney and the attorney general. At this time, S.H. was apparently under the care of a foster parent.
On February 16, 1983, S.H. was interviewed by the police. She repeated her allegations of sexual abuse, this time indicating that the abuse had occurred over a five-year period, between her eighth and thirteenth birthdays. On February 23, 1983, the state initiated a petition in family court, seeking custody of S.H. AS 47.10.010; AS 47.10.142. The petition alleged that S.H. was a "child in need of aid" by virtue of family conflict and sexual abuse. A hearing on the petition was held before the children's court master on February 25.
The state's attorney advised the court that S.H. did not want to testify about "certain issues." He therefore proposed that the parties stipulate to a finding of probable cause that the minor was a child-in-need of aid because she refused to return home. The parties could then consider the charges of sexual abuse at a later time. The parties agreed to this stipulation, and the master predicated his finding that S.H. should be in the temporary custody of the state solely on her refusal to return home.[4] The court made no findings regarding the alleged sexual abuse.
The state also requested "an order requiring psychiatric and/or psychological evaluations of the mother, the father and the child." Counsel for R.H. stipulated to psychiatric and psychological evaluations of the H. family stating, "I have my *273 client's permission." Master Hitchcock recommended the evaluations, stating:
I will recommend assumption of temporary custody and placement as requested and evaluations as requested. Also that all parties keep appointments  necessary appointments with counseling and evaluation proceedings. I do want to emphasize that the emphasis in these proceedings is one of getting to the root of whatever problems exist and dealing with them in a treatment sense, trying to keep  trying to get the family back together if at all possible. It's going to require a lot of hard work on everybody's part of any case of this nature and I would hope that that goal is kept in everyone's mind.
At the hearing, counsel for R.H. indicated that the parents were already seeing Dr. Wetherhorn. R.H.'s first conference with Wetherhorn was on February 22, 1983. On March 15, Superior Court Judge Justin Ripley, acting as a family court judge, adopted Master Hitchcock's recommendations and entered an order formally directing that "[a]ll family members shall attend all group and individual evaluative and therapy sessions scheduled by the approved agency."
On April 25, 1983, R.H. was criminally charged with ten counts of sexual abuse of S.H.: three counts of rape, former AS 11.15.120; two counts of lewd or lascivious acts toward children, former AS 11.15.134; three counts of first-degree sexual assault, former AS 11.41.410(a)(4); and two counts of sexual abuse of a minor, former AS 11.41.440(a)(2). Wetherhorn was subpoenaed to appear before the grand jury on May 3, 1983, and ordered to bring a "copy of files on R.H." The state's planned area of inquiry at the grand jury proceeding was whether R.H. had admitted to Wetherhorn that he had molested his daughters, S.H. and D.H. Counsel for R.H. apparently claimed a privilege as to the requested material. Wetherhorn sought an order from the superior court quashing the subpoena. He contended that his disclosure of R.H.'s confidential communications would violate his ethical obligations as a psychologist. On May 6, 1983, Judge Rowland orally ruled that the matters were privileged and quashed both the subpoena to testify and the subpoena to turn over records. This petition followed.
This is the first occasion upon which we have been asked to interpret AS 47.17.010-.070, and to examine the extent to which these child abuse reporting statutes serve to abrogate the psychotherapist/patient privilege established in Alaska Evidence Rule 504. We are satisfied that this is an appropriate case for interlocutory review. Judge Rowland's order involves an important question of law on which there is substantial ground for differences of opinion. Immediate review of his order will materially advance the ultimate termination of the litigation in question and will protect important public interests which might otherwise be compromised were we to deny review. Alaska R.App.P. 402(b)(2). We assume but do not decide that a motion to quash a subpoena to appear before a grand jury is a proper vehicle for presenting issues of privilege to the trial court for resolution. See 2 C. Wright, Federal Practice and Procedure: Criminal § 273 at 149, § 275 at 162-63 (2d ed. 1982).[5]
*274 Initially, we address the state's contention that two evidentiary exceptions to the psychotherapist/patient privilege apply to this case. Alaska Rule of Evidence 504(b) provides:

General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional conditions, including alcohol or drug addiction, among himself, his physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.
The parties appear to be in agreement that R.H. is a patient, that Dr. Wetherhorn is a psychotherapist, and that the testimony that the state wishes to introduce before the grand jury qualifies as "confidential communications" between R.H. and Wetherhorn. A.R.E. 504(a)(1), (3)(B), (4). Wetherhorn's testimony would therefore appear to be covered by the privilege unless it falls within one or more exceptions. A.R.E. 504(d). The state argues that two exceptions apply. It first relies on A.R.E. 504(d)(5), which provides:
There is no privilege under this rule ... [a]s to information that the physician or psychotherapist or the patient is required to report to a public employee, or as to information required to be recorded in a public office, if such report or record is open to public inspection.
The state argues that Wetherhorn is required to report evidence of child abuse pursuant to AS 47.17.020, that such reports are made to public employees, and that they are required to be recorded in public offices.[6] Finally, the state argues that such reports or records are in essence open to public inspection because they are widely *275 distributed among social service and law enforcement agencies. The child abuse reporting statute is, however, to the contrary. AS 47.17.040(b) provides:
Investigation reports and reports of harm filed under this chapter are considered confidential and are not subject to public inspection and copying under AS 09.25.110 and 09.25.120. However, in accordance with department regulations, investigation reports may be used by appropriate governmental agencies with child-protection functions, inside and outside Alaska, in connection with investigations or judicial proceedings involving child abuse, neglect, or custody. A person, not acting in accordance with department regulations, who makes public information contained in confidential reports is guilty of a misdemeanor.
We find this statute dispositive. Child abuse reports are not open to the public, and are therefore not within A.R.E. 504(d)(5).
Alternatively, the state contends that Wetherhorn's testimony would fall within A.R.E. 504(d)(6), which provides:
There is no privilege under this rule ... [a]s to communications made in the course of an examination ordered by the court of the physical, mental or emotional condition of the patient, with respect to the particular purpose for which the examination is ordered unless the judge orders otherwise. This exception does not apply where the examination is by order of the court upon the request of the lawyer for the defendant in a criminal proceeding in order to provide the lawyer with information needed so that he may advise the defendant whether to enter a plea based on insanity or to present a defense based on his mental or emotional condition.
The state argues that, though R.H. and his wife were seeing Wetherhorn prior to any court proceeding, they continued to see him after the February 25th hearing pursuant to a stipulation with the understanding that Wetherhorn would report to the family court regarding S.H.'s case. This agreement was confirmed by Judge Ripley's order. Thus, the state concludes, since R.H.'s therapy with Wetherhorn constituted "an examination" ordered by the court, R.H.'s statements should be held exempt from the privilege. We disagree. The commentary to Evidence Rule 504(d)(6) states:
In a court ordered examination, the relationship is likely to be an arm's length one though not necessarily so. In any event, an exception is necessary for the effective utilization of this important and growing procedure. When the psychotherapist is appointed by the court, it is most often for the purpose of having the psychotherapist testify concerning his conclusions as to the patient's condition. It would be inappropriate to have the privilege apply in this situation. The exception, it will be observed, deals with a court ordered examination rather than with a court appointed physician or psychotherapist. Also, the exception is effective only with respect to the particular purpose for which the examination is ordered. The final sentence of the exception provides that an accused in a criminal case may have the benefits of private counseling with the psychotherapists.
E.R.C. 125.
In this case, Master Hitchcock made it clear to R.H. that the "proceeding" to which the therapy pertained was a child protective proceeding, and that the purpose for requiring R.H. and his family to consult with Wetherhorn was to reunite the H. family if possible, and if not, to provide for S.H.'s custody. No mention was made of any criminal proceeding, nor was R.H. warned that any statements he made to Wetherhorn could be used against him at future criminal proceedings. See Alaska Children's Rule 12(e)(2); In re P.N., 533 P.2d 13, 19-20 (Alaska 1975). Cf. Loveless v. State, 592 P.2d 1206, 1209 and n. 7 (Alaska 1979) (psychologist's testimony at criminal trial was limited to a description of his observations of defendant at jailhouse interview; the privilege against self-incrimination would require exclusion of statements *276 indicating involvement in crime); Post v. State, 580 P.2d 304, 306 (Alaska 1978) (privilege against self-incrimination is implicated if psychiatrist appointed to determine a defendant's sanity is permitted to testify as to defendant's admission of guilt). Consequently, we conclude that when Judge Ripley ordered R.H. to continue counseling with Wetherhorn he simply adopted Master Hitchcock's previous recommendations and, in so doing, continued to limit the purpose of the examination to the pending child protection proceeding.[7] The exception in Evidence Rule 504(d)(6) would therefore not apply to testimony before a grand jury investigating a criminal charge against R.H., since preparing evidence for the grand jury was not the purpose for which the evaluation and examination were ordered. We therefore conclude that Judge Rowland properly held that the testimony which the state sought to obtain from Wetherhorn and use before the grand jury was privileged under Alaska Evidence Rule 504(b), and did not fall within any of the exceptions to that privilege.
We next address the state's contention that the legislature abrogated the psychotherapist/patient privilege in child abuse cases by enactment of AS 47.17.060.[8] The parties agree that Dr. Wetherhorn, as a psychologist, is obligated by statute to report evidence of child abuse even if it originates from a patient, AS 47.17.010. They disagree over the admissibility of Wetherhorn's *277 testimony concerning the reported evidence in criminal proceedings.
The state argues that AS 47.17.060 abrogates the psychotherapist/patient privilege in criminal prosecutions for sexual abuse. That section provides:
Neither the physician-patient nor the husband-wife privilege is a ground for excluding evidence regarding a child's harm, or its cause, in a judicial proceeding relating to a report made under this chapter.
The parties are in disagreement as to whether a criminal proceeding is "a judicial proceeding relating to a report made under this chapter."[9]
The state argues that the legislature has established two separate procedures for addressing physical and sexual abuse of minors. First, it has established a civil proceeding for identifying victims of child abuse and neglect and protecting them as children in need of aid. See AS 47.17.010-.070. Secondly, the legislature has made physical and sexual abuse of children a crime and has provided for its punishment. See AS 11.41.410-.470. Furthermore, the state contends, either a child protection proceeding under Title 47, or a criminal proceeding under Title 11 may result from a report that a specific child was subjected to physical or sexual abuse. The state concludes that both types of proceedings relate to child abuse reports made under AS 47.17, and that the psychotherapist/patient privilege should therefore not apply in criminal proceedings for sexual abuse.
Judge Rowland found that AS 47.17.060 only applied to child protective proceedings instituted under AS 47.10.010-.070. While we believe that the issue is very close and recognize that the state has cited respectable authority in support of its position, see People v. Corbett, 656 P.2d 687 (Colo. 1983); State v. Brydon, 626 S.W.2d 443 (Mo. App. 1981); State v. Suttles, 287 Or. 15, 597 P.2d 786 (1979); State v. Fagalde, 85 Wash.2d 730, 539 P.2d 86 (1975), we affirm Judge Rowland's conclusion.
Alaska enacted a series of statutes in 1965 providing for reporting of child abuse and neglect. Former AS 11.67.010-.070. The statute in question was enacted in its present form as AS 11.67.060. Ch. 98, § 1, SLA 1965. As originally enacted, AS 11.67.010 did not mention sexual abuse and permitted, but did not require, doctors and nurses to report instances of physical abuse of children to the Department of Health and Welfare without fear of legal repercussions. Former AS 11.67.010, .050. Both the placement of the section in the criminal code and the specific requirement that the Department of Health and Welfare forward the results of its investigations to the district attorney, former AS 11.67.040, support the state's position that as originally enacted the reporting statutes contemplated criminal as well as civil proceedings.[10]
In 1968, the reporting statutes were amended to make reporting mandatory rather than permissive. Ch. 72, § 2, SLA 1968. In addition, for the first time, the *278 legislature spelled out the purposes of the reports. Former AS 11.67.005 provided:

Declaration Of Purpose. In order to protect children whose health and welfare may be adversely affected through the infliction, by other than accidental means, of physical injury or physical neglect requiring the attention of a practitioner of the healing arts, the legislature hereby provides for reporting of these cases by practitioners and others to the appropriate public authorities. It is the intent of the legislature that, as a result of these reports, protective services shall be made available in an effort to prevent further abuses, and to safeguard and enhance the general welfare of the children in this state.
In 1971, AS 11.67.010-.070 was repealed and reenacted as AS 47.17.010-.070 Ch. 100 SLA 1971. The legislative purposes previously set out in former AS 11.67.005 were continued in AS 47.17.010[11] with one significant addition. The legislature added an intent to "preserve family life whenever possible" while providing protective services to children.
More significant were the changes made to former AS 11.67.040, which had provided:

Action on reports. Upon receipt of a report of injury, the department shall investigate and take action, as prescribed by law, which may be necessary to prevent further injury to the child or to insure the proper care and protection of the child. The department shall forward the results of an investigation made pursuant to a report to the district attorney of the area in which the injury was discovered.
This section was rewritten in AS 47.17.030, which provides:

Action on Reports; Termination of Parental Rights. (a) If a child, concerning whom a report of harm is made, is believed to reside within the boundaries of a local government exercising health functions for the area in which the child is believed to reside, the department may, upon receipt of the report, refer the matter to the appropriate health or social services agency of that local government. For cases not referred to an agency of a local government, the department shall, for each report received, investigate and take action, in accordance with law, which may be necessary to prevent further harm to the child or to insure the proper care and protection of the child.
(b) A local government health or social services agency receiving a report of harm shall, for each report received, investigate and take action, in accordance with law, which may be necessary to prevent further harm to the child or to insure the proper care and protection of the child. In addition, the agency receiving a report of harm shall forward a copy of its report of the investigation, including information the department requires by regulation, to the department.
(c) Action shall be taken regardless of whether the identity of the person making the report of harm is known.
(d) Before the department or a local government health or social services agency may seek the termination of parental rights, under AS 47.10.080(c)(3), it shall offer protective social services and pursue all other reasonable means of protecting the child.
....
This change is important because the legislature eliminated the requirement in former AS 11.67.040 that the "department shall forward the results of an investigation made pursuant to a report to the district attorney of the area in which the injury was discovered."
In summary, moving the reporting statute from Title 11, governing crimes, to Title 47, governing health and welfare, adding a family preservation purpose to the statute, and eliminating the requirement that the district attorney automatically be notified of child abuse reports, gives some indication that in 1971 the legislature intended the reports to prompt judicial proceedings *279 relating to the provision of protective services under AS 47.10.010, rather than criminal prosecutions under former AS 11.15.120 (statutory rape) and former AS 11.15.134 (lewd or lascivious acts toward children).
While it is true that the amended statute retains provisions for notification to law enforcement agencies where local conditions preclude recourse to the Department of Health and Social Services, it is also clear that law enforcement agencies are to act as temporary agents of the department by instituting civil proceedings; they are not necessarily required to institute criminal proceedings. See AS 47.17.020(c). See also AS 47.10.140 (allowing peace officer to detain minor for minor's own protection, but requiring notification to the department within twelve hours). In contrast, AS 47.10.142, which was added when these provisions were moved from Title 11 to Title 47 in 1971, provides that the department may take emergency custody of and provide temporary placement for children thought to be abused or neglected. Ch. 100, § 3, SLA 1971. Giving the department primary control of the abused child again indicates a legislative intent that the "judicial proceedings" referred to in AS 47.17.060 occur through the department in relation to protective services, and are civil rather than criminal.
Further, in 1976, AS 47.17.030 was amended to provide:
(e) In all actions taken by the department or a health and social services agency of a local government under this chapter that result in a judicial proceeding, the child shall be represented by a guardian ad litem in that proceeding. [Emphasis added.]
See 42 U.S.C. § 5103(b)(2)(G) (1982) (requiring that states accepting federal funds enact such a provision). A guardian ad litem would be necessary where the child was a party to the proceeding, such as in a child protection proceeding, but would be unnecessary where the child was merely a witness, such as in a criminal sexual abuse proceeding. Therefore, this provision also tends to indicate that the legislature, in using the phrase "judicial proceeding" in AS 47.17.060, was referring to child protective proceedings under Title 47 rather than criminal proceedings under Title 11.
We recognize that the legislature amended the child abuse reporting statute again in 1982, adding AS 47.17.025, which provides:

Duties of Public Authorities. (a) A law enforcement agency shall immediately notify the department of the receipt of a report of harm to a child from abuse. Upon receipt from any source of a report of harm to a child from abuse, the department shall notify the Department of Law and investigate the report and, within 72 hours of the receipt of the report, shall provide a written report of its investigation of the harm to a child from abuse to the Department of Law for review.
(b) The report of harm to a child from abuse required from the department by this section shall include:
(1) the names and addresses of the child and the child's parent or other persons responsible for the child's care, if known;
(2) the age and sex of the child;
(3) the nature and extent of the harm to the child from abuse;
(4) the name and age and address of the person known or believed to be responsible for the harm to the child from abuse, if known;
(5) information that the department believes may be helpful in establishing the identity of the person believed to have caused the harm to the child from abuse. [Emphasis supplied.]
The state vigorously argues that this recently enacted section requiring notification to the Department of Law establishes legislative intent that child abuse reports result in criminal prosecutions. We are not convinced. The Department of Law serves a number of functions. It represents state departments, such as Health and Social Services, in legal proceedings, such as civil actions for the protection of children. AS *280 44.23.020(b)(2). In addition, the Department of Law prosecutes violations of state law. AS 44.23.020(b)(3). Former AS 11.67.040 required reports to be made to the district attorney, whose primary responsibility is prosecution of violations of law. Current AS 47.17.025 refers to the Department of Law, without reference to the criminal division. Thus, AS 47.17.025 does not, standing alone, necessarily resurrect the requirement of former AS 11.67.040 that the district attorney receive child abuse reports; nor does it establish an intent that child abuse reports result in criminal prosecutions. Consequently, we cannot find that a criminal prosecution for child sexual abuse is necessarily "a judicial proceeding related to a report made under this chapter" pursuant to AS 47.17.060.
Since the reference to "judicial proceedings" in AS 47.17.060 could mean either civil proceedings alone under AS 47.10.010, or civil and criminal proceedings, the reference to "judicial proceedings" is ambiguous. We therefore apply the normal rule that ambiguous statutes affecting criminal proceedings should be strictly construed in favor of criminal defendants.[12] We hold that the phrase "judicial proceeding related to a report made under this chapter" in Alaska Statute 47.17.060 only refers to child protection proceedings under AS 47.10.010. We therefore affirm Judge Rowland's decision.
This conclusion is reinforced by a number of policy considerations. As we noted in Parker v. State, 667 P.2d 1272, 1274 (Alaska App. 1983), ambiguous statutes should be interpreted in such a way as to avoid conflict with the constitution. The state's interpretation of these statutes raises potential conflicts with the constitutional right to privacy, Alaska Const. art. 1, § 22, and the right against compulsory self-incrimination, Alaska Const. art. 1, § 9.
As the supreme court noted in Falcon v. Alaska Public Offices Comm'n., 570 P.2d 469 (Alaska 1977), article 1, section 22, of the state constitution protects its citizens in their reasonable expectations of privacy. The court specifically concluded that the relationship between a patient and a psychologist was deserving of protection under the privacy guarantee of our state constitution. 570 P.2d at 480. In Falcon, the supreme court considered the constitutionality of state statutes requiring financial disclosures by public officers and members of public boards. Falcon was a practicing physician who was also a member of the Kodiak Island School Board. Id. at 470. He refused to list his patients as required by the financial disclosure law, claiming an infringement of his patients' rights to privacy. Id. at 472. The Alaska Supreme Court agreed with Falcon, and reversed the lower court, in part based upon its interpretation of the state constitution. The court recognized that Falcon was seeking to preserve his patients' rights to confidentiality in seeking medical treatment. Though the court noted that many forms of illness do not stigmatize their sufferers, it felt that in certain areas of treatment patients have a substantial privacy interest protected by the state constitution. Id. at 479-80. These areas include abortions, psychological and psychiatric treatment, and treatment for venereal disease. Until the Public Offices Commission adopted a regulation clearly protecting these categories of patients, the court held that the constitution precluded requiring a physician who accepted *281 membership on a public board from disclosing his patients' names. Id. at 480.
To require a psychologist to testify in a criminal proceeding, over his objection, to confidential communications with a patient raises analogous problems.[13] Proceedings pursuant to AS 47.10 and AS 47.17 are essentially confidential. Only the immediate participants are aware of what transpires. Testimony by a psychologist or psychiatrist in the context of such a proceeding would not amount to general publication of his patient's problems. In addition, the nature of the proceedings are corrective rather than punitive. A psychologist or psychiatrist testifying in such a proceeding might well be perceived as helping rather than harming his patient. In contrast, in a criminal proceeding the psychologist would necessarily be cast as an adversary of his former patient. Under these circumstances, interpreting AS 47.17.060 to abrogate the psychotherapist privilege in criminal proceedings would raise serious questions under article 1, section 22, of our state constitution that are best reserved until such time as the legislature manifests a clear intention to require such testimony in criminal proceedings.
Such an interpretation would also raise problems under article 1, § 9, of the Alaska Constitution, which establishes a privilege against self-incrimination. The state argues that the use of R.H.'s statements to Wetherhorn does not violate the Fifth Amendment to the United States Constitution because R.H. waived his rights by participating in therapy. Some constitutional rights may be forfeited, while others can only be lost through waiver. See Lemon v. State, 654 P.2d 277, 279 (Alaska App. 1982) (distinguishing between forfeiture  the loss of a right through failure to assert it  and waiver  the loss of a right through knowing, intelligent and voluntary relinquishment). Generally, the privilege against self-incrimination is forfeited if not asserted. See Garner v. United States, 424 U.S. 648, 655-56, 96 S.Ct. 1178, 1183-84, 47 L.Ed.2d 370, 378 (1976). Waiver is required, however, where one is in custody and subjected to interrogation. Miranda v. Arizona, 384 U.S. 436, 474-75, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 723-24 (1966). Where a psychiatrist or psychologist acts as a state agent and interviews a defendant in police custody, waiver is required before the defendant's statements to the therapist may be used against him. Estelle v. Smith, 451 U.S. 454, 467, 101 S.Ct. 1866, 1875, 68 L.Ed.2d 359, 371-72 (1981). See also Loveless v. State, 592 P.2d 1206, 1209 n. 7 (Alaska 1979); Loveless v. State, 634 P.2d 941, 942-43 (Alaska App. 1981) (on remand from the supreme court).
The state vigorously argues that R.H. was represented by counsel and was not in custody. Hence, the state contends that a forfeiture standard applies to R.H.'s statements to Wetherhorn. However, the Alaska Supreme Court has applied a waiver standard rather than a forfeiture standard in a situation similar to the present case. See In re P.N., 533 P.2d 13, 19 (Alaska 1975) (defendant's testimony at child protection proceeding admitting sexual abuse of his child did not, in the absence of Miranda warnings, establish waiver of privilege against self-incrimination). Contra United States v. Jones, 640 F.2d 284, 287 (10th Cir.1981) (defendant's statement during a court-ordered psychiatric examination admissible as evidence of mental status; privilege against self-incrimination inapplicable unless invoked at time of questioning). Master Hitchcock assured R.H. that any examination by Dr. Wetherhorn would be solely for purposes of the child protection proceeding. R.H. was not given the warnings required by Children's Rule 12(e)(2). Therefore, even though R.H. was represented by counsel, we do not find a waiver of R.H.'s privilege against self-incrimination on this record. Moreover, we believe that similar fifth amendment problems would arise in future cases, if we *282 were to hold that a patient loses the psychotherapist/patient privilege in a subsequent criminal proceeding by cooperating in court-ordered psychotherapy in a child protection proceeding.
We recognize that constitutional rights are not absolute. Perhaps the public interest in preventing child abuse would render constitutional a carefully drafted statute or court rule abrogating the psychotherapist/patient privilege in child abuse prosecutions. We believe, however, that the constitutional problems are sufficiently substantial that we should interpret the ambiguous statute in a manner that avoids potential constitutional problems. See Parker v. State, 667 P.2d 1272, 1274 (Alaska App. 1983).
The average person facing an eight-year presumptive term for sexual abuse of a minor will not confess to a psychotherapist and seek treatment if he knows that the psychotherapist will testify against him at a criminal trial. An interpretation of AS 47.17.060 favorable to the state would only trap the uninformed. Arguably, in this context, the fifth amendment privilege against self-incrimination requires that the uninformed be informed before the evidence may be used. See In re P.N., 533 P.2d at 19. Alternatively, professional ethics might impose such a requirement on psychotherapists.
On the other hand, knowledge that statements made to a psychotherapist could be used at a subsequent child protection proceeding does not apparently chill a parent's willingness to seek therapy and submit to examinations. Perhaps the legislature recognized this and concluded that limiting the use of child abuse reports to child protective proceedings would increase child protection.[14] This could account for the transfer of the child abuse reporting statutes from Title 11 to Title 47 and deletion of the requirement that the area district attorneys be informed of such reports. We cannot be sure. We are satisfied, however, that such an interpretation avoids constitutional difficulties without sacrificing child protection and should be adopted in this case.[15]
The judgment of the superior court is AFFIRMED.[16]
*283 COATS, Judge, concurring.
I concur with the conclusion that the state cannot compel Dr. Wetherhorn to testify in front of the grand jury concerning his treatment of R.H. where the psychotherapist/patient privilege has been claimed. However, I am concerned that the majority opinion could be read as indicating that a psychotherapist's testimony could be compelled in a child protection proceeding initiated under Title 47. This is an issue which we do not reach.
In a case involving the interpretation of a privilege, there is an argument that we should attempt to define the exact nature of the privilege so that those who are affected by it will know its scope. To the extent that a patient of a psychotherapist does not know whether his communications to the psychotherapist will be confidential, the patient will be intimidated in revealing confidential information. However, in the case before us several factors work against deciding to what extent Dr. Wetherhorn can be compelled to testify in a Title 47 proceeding. First, Dr. Wetherhorn and R.H. have indicated no opposition to having Dr. Wetherhorn testify in a Title 47 proceeding. Thus, in the case before us no one has briefed or argued the position that Dr. Wetherhorn should not testify in a Title 47 hearing or that his testimony should be limited. Second, except in delinquency matters and waivers of children's court jurisdiction, this court has no jurisdiction over Title 47 cases. AS 22.07.020(3).
There appear to be some significant issues which this court would have to deal with before we decided that a psychotherapist could be compelled to testify in a Title 47 proceeding. First, AS 47.17.060 states that "the physician-patient ... privilege is [not] a ground for excluding evidence regarding a child's harm, or its cause, in a judicial proceeding related to a report under this chapter." [Emphasis supplied.] There is certainly an argument that the physician/patient privilege referred to in AS 47.17.060 is not the same as the psychotherapist/patient privilege. See Allred v. State, 554 P.2d 411, 415 n. 7 (Alaska 1976) (finding that the physician/patient privilege codified in former Civil Rule 43(h)(4) would not extend to cover communications to a psychiatric social worker). The majority discusses this issue. See supra note 8. Assuming that the legislature intended to have AS 47.17.060 abrogate the psychotherapist/patient privilege, there is a related issue of whether the legislature has complied with Leege v. Martin, 379 P.2d 447, 451 (Alaska 1963).[1]
Second, assuming that AS 47.17.060 applies to abrogate the psychotherapist/patient privilege, there is an issue of whether the psychotherapist can be required to do anything more than file a report. This question addresses the scope of what the psychotherapist must report and the nature of the testimony which the state can compel. Compare State v. Andring, 342 N.W.2d 128 (Minn. 1984); People v. Stritzinger, 34 Cal.3d 505, 194 Cal. Rptr. 431, 668 P.2d 738 (Cal. 1983) (cases holding psychotherapist/patient privilege abrogated in criminal child abuse prosecutions by child abuse reporting statutes only to extent permitting evidentiary use of information contained in initial abuse report) with State v. Brydon, 626 S.W.2d 443 (Mo. App. 1981); State v. Fagalde, 85 Wash.2d 730, 539 P.2d 86 (1975) (cases holding psychotherapist/patient privilege completely abrogated in criminal child abuse prosecution by child abuse reporting statutes).
Finally, before we could decide that the state can compel a psychotherapist to testify in a hearing initiated under Title 47, there are some difficult policy arguments which we would have to face. Certainly no one favors child abuse or withholding information concerning child abuse. However, the court accepts the policy argument that if the psychotherapist/patient privilege were eliminated in criminal cases concerning child abuse, people who in the past had committed acts of child abuse would not seek the help of a psychotherapist because they would fear that the psychotherapist would testify against them in a criminal case. It appears to me that the same policy argument would apply if the testimony of the psychotherapist could be used, for instance, in a proceeding under Title 47 to terminate parental rights. Therefore I want to make it clear that the court is not *284 deciding the issue of whether the state can compel the testimony of a psychotherapist in an action initiated under Title 47.
NOTES
[1] Alaska Evidence Rule 504(b) provides:

General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional conditions, including alcohol or drug addiction, among himself, his physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.
[2] Alaska Statute 47.17.060 provides:

Evidence not privileged. Neither the physician-patient nor the husband-wife privilege is a ground for excluding evidence regarding a child's harm, or its cause, in a judicial proceeding related to a report made under this chapter.
[3] Alaska Evidence Rule 504(d) provides the following exceptions to the physician and psychotherapist-patient privilege:

(5) Required Report. As to information that the physician or psychotherapist or the patient is required to report to a public employee, or as to information required to be recorded in a public office, if such report or record is open to public inspection.
(6) Examination by Order of Judge. As to communications made in the course of an examination ordered by the court of the physical, mental or emotional condition of the patient, with respect to the particular purpose for which the examination is ordered unless the judge orders otherwise. This exception does not apply where the examination is by order of the court upon the request of the lawyer for the defendant in a criminal proceeding in order to provide the lawyer with information needed so that he may advise the defendant whether to enter a plea based on insanity or to present a defense based on his mental or emotional condition.
[4] It appears that S.H. had moved in with a friend whose home was not licensed as a state-approved foster home. The state agreed to investigate the possibility of licensing that home so that S.H. could remain there until the children's proceeding was resolved.
[5] The parties have not briefed this issue. The state seems to concede that Dr. Wetherhorn would have nothing relevant to tell the grand jury besides that which is covered by the privilege, if it is available. If it had appeared at the hearing that some potential testimony was privileged but other potential testimony was not privileged, we assume that Judge Rowland would have defined the scope of the privilege in an appropriately drawn order in limine or protective order, rather than quashing the subpoena.

There are a number of other issues which the parties have not briefed and which we do not decide. For example, the parties have not addressed the concern expressed in In re P.N., 533 P.2d 13, 19-20 (Alaska 1975), that AS 47.10.090(a), which requires confidentiality of juvenile court records, might independently privilege a parent's confession of sexual abuse during a children's proceeding, against use in a subsequent criminal action. A similar statute requires confidentiality in relation to investigative reports of sexual abuse. AS 47.17.040. Therefore, such a privilege might extend to statements made during a psychological evaluation ordered by the children's court in a child protection case where sexual abuse is suspected.
The parties have not briefed the extent to which the federal statutes imposing obligations on states receiving federal funds to fight child abuse might control the decision in this case, or at least provide guidance about the legislature's intent in transferring child abuse reporting from Title 11 to Title 47. See Child Abuse Prevention and Treatment Act of 1974, 42 U.S.C. §§ 5101-5106 (1983) (§ 5103(b)(2)(E) provides, for example, that states accepting federal funds must maintain confidentiality of child abuse records "to protect the rights of the child, his parents or guardians."); 45 C.F.R. § 1340.1-.20 (1983).
The federal regulations permit the state to expressly allow disclosure of information in child abuse reports to, inter alia, grand juries. 45 CFR § 1340.14(i)(2)(iii) (1983). AS 47.17.040 provides that investigative reports of child abuse may be used in conjunction with investigations and judicial proceedings involving child abuse. It does not specifically mention grand juries. 7 AAC §§ 36.010-.900 prohibits disclosure, with limited exceptions, of information received concerning recipients of DFYS services. However, 7 AAC § 36.100 specifically allows disclosure to criminal justice officials where aid to such officials is necessary to carry out family and youth service programs. In other cases disclosure to criminal justice officials requires a court order. It is not clear what procedure must be followed to obtain the court order. Nor is it clear what standards the court is to apply in granting or denying an order. 7 AAC § 36.100 provides:
Disclosure To Criminal Justice Officials. (a) The division may not disclose safeguarded information, in the absence of a court order, to federal, state, or local law enforcement officers, or other criminal justice officials unless that information will be used for purposes directly connected with the administration of family and youth services programs. Included in those purposes may be requests for assistance from law enforcement officers in obtaining physical custody of a child, requests for assistance in investigation of harm to an adult or child, and requests for assistance where disclosure is necessary to protect the safety of the client or the public.
(b) When a court order is issued directing the division to disclose information not otherwise disclosable under this chapter to a law enforcement or criminal justice agency, the division shall apprise the court of the statutes and regulations concerning confidentiality and ask the court to rule on disclosability before disclosing the information.
The relaxation of the confidentiality requirement in the federal and state regulations implies that child abuse reports might not be privileged in criminal proceedings related to that abuse, if a prior court order authorizes a release of such reports to criminal justice officials.
[6] The parties appear to agree that the phrase "if such report or record is open to public inspection" governs both clauses of this exception.
[7] Even in the context of the children's proceeding, it is arguable that the trial court's order directing R.H. to continue counseling with Wetherhorn contemplated treatment in addition to an evaluation. It would appear that only Wetherhorn's evaluation would be within the exception to the privilege and not information which was gained thereafter in the course of treatment.
[8] We assume but do not decide that AS 47.17.060 applies to psychologists, who are not physicians. In Allred v. State, 554 P.2d 411, 415-16 (Alaska 1976), the supreme court held that any statute creating a privilege, and by implication modifying a privilege, would be an amendment to former Criminal Rule 26 and former Civil Rule 43(h), both of which address evidentiary privileges. To be effective, such an amendment would have to specifically address the rules and be passed by a two-thirds majority in each house. AS 47.17.060 was originally enacted, with nearly identical language, as AS 11.67.060. When the legislature enacted AS 11.67.060 it specifically addressed Civil Rule 43(h)(1) and (4) but not Criminal Rule 26. The "amendment" was passed by a two-thirds majority of both houses. Ch. 98, § 2, SLA 1965. There is no reference to the court rules in the bill which transferred AS 11.67.060 from Title 11 to Title 47. See Ch. 100 SLA 1971. Arguably, under Allred, since the legislature never addressed Criminal Rule 26, it intended to abolish the named privileges in civil, but not criminal cases.

Furthermore, under the now superseded Civil Rule 43, the Alaska Supreme Court specifically addressed AS 11.67.060 by incorporating its language into a "child abuse and neglect" privilege. Former Civil Rule 43(h)(8) stated:
(8) Child Abuse And Neglect. Neither the physician-patient nor the husband-wife privilege shall be a ground for excluding evidence regarding a child's injury, or its cause, in any judicial proceeding resulting from a report made under Chapter 67 AS 11.
This language is virtually identical to the language in AS 11.67.060. The rules cross-referenced AS 11.67.060 as well. No such language appears in former Criminal Rule 26 under privileges. This language indicates that AS 11.67.060, even as originally enacted, was only applicable to abrogate the named privileges in civil proceedings and not in criminal proceedings.
The supreme court recognized a common law psychotherapist/patient privilege for the first time in 1976 in Allred v. State, 554 P.2d at 418. It is instructive that the court did not view the new privilege as part of the existing physician/patient privilege which did not apply in criminal cases or to psychiatric social workers. 554 P.2d at 415. The supreme court codified the psychotherapist/patient privilege as part of the new Alaska Rules of Evidence in 1979. A.R.E. 504. It is noteworthy that the supreme court established an exception to the husband/wife privilege for criminal child abuse prosecutions, A.R.E. 505(a)(2)(D)(i)-(ii), but established no similar exception to the psychotherapist/patient privilege. The supreme court did create an exception to the physician/patient privilege in child protection proceedings. Children's Rule 13(b).
Thus, the legislature has never directly addressed abrogating the psychotherapist/patient privilege in criminal proceedings, and under Allred the enactment of AS 47.17.060 may not have validly done so. The parties have argued the applicability of AS 47.17.060 to psychologists but they have not considered the relevance of Allred and the supreme court's rule making power. We therefore decline to consider the issue and will assume, without deciding, that psychologists are covered by AS 47.17.060.
[9] The purpose of the reports referred to in AS 47.17.060 is described in AS 47.17.010:

In order to protect children whose health and well-being may be adversely affected through the infliction, by other than accidental means, of harm through physical abuse or neglect requiring the attention of a practitioner of the healing arts, the legislature requires the reporting of these cases by practitioners and others to the appropriate public authorities. It is the intent of the legislature that, as a result of these reports, protective services will be made available in an effort to prevent further harm to the child, to safeguard and enhance the general well-being of the children in this state, and to preserve family life whenever possible.
[10] It is instructive, however, that in enacting AS 11.67.060, the legislature specifically stated an intention to amend the civil rules regarding privileges but did not mention the criminal rules. Ch. 98, § 2, SLA 1965. While the physician/patient privilege did not apply to criminal cases, the husband/wife privilege did. Former Alaska R.Crim.P. 26(b)(2). See supra note 8. This treatment of privileges gives some support to an interpretation limiting former AS 11.67.060 to civil proceedings.
[11] See supra note 9.
[12] The state disputes the applicability of this rule of construction, reasoning that evidentiary privileges in litigation are not favored and should be narrowly construed. Herbert v. Lando, 441 U.S. 153, 175-76, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115, 133 (1979). See also United States v. Nixon, 418 U.S. 683, 711, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039, 1066 (1974). However, we are satisfied that the close nexus between the psychotherapist/patient privilege and the state constitutional right to privacy requires us to apply the privilege literally and strictly construe any limitation on the privilege. Alaska Const. art. 1, § 22. See People v. Stritzinger, 34 Cal.3d 505, 194 Cal. Rptr. 431, 435-36, 668 P.2d 738, 742-43 (1983). See also Falcon v. Alaska Public Offices Comm'n., 570 P.2d 469, 478-80 (Alaska 1977) (forced disclosure of patients' names by physician, specifically including psychiatrist or psychologist, implicates privacy interests).
[13] We recognize that in Allred v. State, 554 P.2d 411, 416 (Alaska 1976), the Alaska Supreme Court found no state action which would trigger a constitutional right to privacy and form the basis for a psychotherapist/patient privilege. However, Allred is distinguishable. In that case the defendant requested to see his own psychiatrist or a psychiatric social worker employed by the psychiatrist. The therapist who talked with Allred apparently had no objection to testifying. 554 P.2d at 413. Under those circumstances, the court found no state action triggering application of Alaska Constitution article 1, section 22. Here, R.H. was ordered to consult with Dr. Wetherhorn and the state is using a subpoena to force Dr. Wetherhorn to disclose the results of that consultation. The court order and the subpoena would appear to provide as much "state action" as the disclosure regulations discussed in Falcon.
[14] The state argues that a criminal proceeding is needed to prevent future abuse of other children in the abuser's family by imprisoning the abuser. It reasons, mistakenly we believe, that a child protection proceeding only benefits the abused child involved in that proceeding. However, a verified report that one of several children in a family was the victim of sexual abuse might justify protective services to all the children, including those who had not been abused. In re P.N., 533 P.2d at 16.
[15] We do not decide whether AS 47.17.060 abrogates the privilege in child protective proceedings. See supra note 7. That issue is not before us. Since appeals from decisions in child protective proceedings go to the supreme court rather than this court, this issue will never be before us. AS 22.07.020(3) (court of appeals jurisdiction over children's court matters limited to adjudications of delinquency and waiver of children's court jurisdiction, AS 47.10.010(a)(1); AS 47.10.060).
[16] After the initial publication of this opinion, the state petitioned for rehearing apparently concerned that our decision suggests that, in the absence of (1) a request for assistance by the Department of Health and Social Services or (2) a previously obtained court order, the Department of Law would be in violation of AS 47.17.010 et seq. (as interpreted in 7 AAC 36.100) if it permitted its agents who were primarily involved in prosecuting crimes to have access to the reports of child abuse and neglect filed pursuant to the reporting statutes. The state is concerned that others will read our opinion as establishing an exclusionary rule in criminal cases governing all information contained in child abuse and neglect reports and the source of such information. See ARE 412. We grant the petition for rehearing in order to clarify our decision. Our opinion does not address the propriety of the dissemination of information about child abuse or neglect reports within the Department of Law except to hold that such dissemination, if it occurs, does not make the reports open to the public. See ARE 504(d)(5). Nor does our opinion construe 7 AAC 36.100 or attempt to apply it to district attorneys. While we have concluded that the 1982 legislative amendment to AS 47.17.025, making child abuse and neglect reports available to the Department of Law, does not necessarily reflect an intent by the legislature that grand jury proceedings fall within the definition of a "judicial proceeding related to a report made under this chapter," AS 47.17.060, our opinion should not be construed as a holding that the statute was intended to restrict the flow of information to prosecuting authorities. We express no view on that issue. Finally, our opinion only addresses psychiatrists and psychologists whose testimony is privileged by Evidence Rule 504. It does not address anyone else who might make a report under AS 47.17.010 and thereafter wish to testify in a criminal proceeding about matters related to the report.
[1] Children's Rule 13 provides in pertinent part:

(b) Physician-Patient Privilege Inapplicable. The testimony of a treating physician or nurse concerning the physical, mental, or emotional state of a child, his parents, guardian, or custodian shall be admitted into evidence, in the court's discretion, where such testimony appears to the court to be relevant to the proper exercise of the court's jurisdiction.
The psychotherapist/patient privilege is not referred to in the children's rules.