**Maurice E. MARTIN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 98–CF–1165.**

District of Columbia Court of Appeals.

Argued June 7, 2000.

Decided July 27, 2000.

Robert O. Goff, Flint Hills, VA, appointed by this court, for appellant.

Ayanna J. McKay, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Roy McLeese, III, and Jeanne Hauch, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, FARRELL, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

■ Appellant was convicted by a jury of aggravated assault while armed[1] and assault with a dangerous weapon.[2] On appeal, appellant contends he was denied his Sixth Amendment right to be confronted with the witnesses against him when the trial court held outside the presence of the jury a hearing on whether to hold a

recalcitrant witness in contempt.[3] Appellant also asserts that the government failed to introduce sufficient evidence to support his convictions.[4] We affirm.

**I.**

On the evening of March 21, 1997, Terry Freeman was working as a security guard at Woodson High School, where a go-go dance was being held in the gymnasium. At the beginning of his shift Freeman, who is six feet, six inches tall, stood at the front door of the school, but shortly after 11:00 p.m. he moved to the area in front of the band where his height enabled him to see over the crowd. Freeman testified that the section of the gym away from the band was lighted. At approximately 11:30 p.m. Freeman observed a circle forming in the crowd in the lighted section of the dance floor. Freeman had an unobstructed view of the circle from his position, about thirty feet away. He testified that he saw two men "throwing punches at each other" and the "guy with the white shirt" was holding a weapon, which looked sharp and approximately three inches long.

Freeman approached the circle of people and pulled appellant away from the victim, Dominic Gibson, who was bleeding and appeared to be in shock from multiple stab wounds around his neck and chest. Freeman and another security guard took appellant to a private room where they searched him for weapons, but found none. Two acquaintances of appellant testified

1. D.C.Code §§ 22–504.1, –3202 (1996 Repl.).

2. D.C.Code § 22–502 (1996 Repl.).

3. The Confrontation Clause of the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."

4. We find no merit in appellant's argument that the government failed to provide sufficient evidence to support his convictions; specifically that it failed to establish identity. The evidence adduced at trial, viewed in the light most favorable to the government, *Spencer v. United States*, 688 A.2d 412, 415

(D.C.1997) (quoting *Byrd v. United States*, 388 A.2d 1225, 1229 (D.C.1978)), was sufficient to establish that appellant was the person who committed the assaults. He was identified by Freeman, an eyewitness to the altercation who had the opportunity to observe it from the time it began until it ended. During the course of the fight, Freeman was no more than thirty feet away from the crowd, and was close enough to see a small sharp object in appellant's hand and observe appellant's face. Further, the area of the gymnasium where the fight occurred was sufficiently lit to enable Freeman to observe appellant.

that appellant did not engage in the fight with Gibson.

Prior to jury selection, the prosecutor informed the court *ex parte* that the victim, Gibson, was an unindicted co-conspirator in a federal district court case in which he was alleged to have committed a shooting. The court called Gibson to testify outside the presence of the jury about his knowledge of an investigation or case proceeding against him, but Gibson refused to answer any questions, even after his attorney explained that he could be held in contempt of court. His attorney represented that Gibson would also refuse to answer any questions about the case against appellant. The next day, the court questioned Gibson about his willingness to testify and Gibson confirmed that he would not answer any questions in appellant's trial.

The prosecutor then requested that the court find Gibson in criminal contempt for his refusal to testify. Defense counsel urged the court to hold the hearing in the presence of the jury. The court declined to do so and called Gibson to the stand for a contempt hearing outside the presence of the jury. Gibson insisted that his refusal to speak was of his own free will and he was not asserting any type of privilege.[5] The court then summarily found him in criminal contempt. At the close of the evidence the court agreed with defense counsel's request that it take judicial notice of the contempt finding. The court also informed the jury in its instructions that Gibson had been held in contempt of court for his failure and refusal to testify and instructed the jury that it could "give this evidence such weight, if any, as in your judgment it is fairly entitled to receive."

## II.

### A.

■ Appellant argues that he was denied his Sixth Amendment right of confrontation when the trial court conducted the contempt hearing of Gibson outside of the presence of the jury, thereby preventing the jury from observing the witness' demeanor and manner while on the stand. This argument is unavailing because the contempt hearing was not a part of the prosecution of appellant, but a proceeding against Gibson. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant...." *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Any testimony offered by Gibson during the criminal contempt proceeding would not have been directed against appellant. Appellant's Confrontation Clause right did not apply to Gibson's contempt hearing because it was not an occasion for presenting evidence against appellant.

### B.

■ We next consider whether, since the Confrontation Clause did not apply, there is any other basis for concluding that the court erred in conducting the contempt hearing outside the presence of the jury. The law is clear that if a witness has declared unequivocally that he will not testify on the basis of the Fifth Amendment privilege against self-incrimination, the witness should not be placed on the stand and required to make that claim in front of the jury. "[T]he trial court may bar a witness [who invokes the Fifth Amendment privilege] from testifying in the jury's presence if it properly concludes that the witness may refuse to answer essentially all of the questions which he

---

**5.** Prior to the contempt hearing Gibson was asked by the court, "are you willing to tell us the reason that you're refusing to answer the questions"? and Gibson responded, "Because it ain't no reason." The court then proceeded to ask, "You're not telling me that you're refusing to answer these questions because of some other concern that some sort of Fifth Amendment privilege in some way that I can't even figure out, you're not telling me that"? Gibson responded, "No."

may be asked." *Reese v. United States,* 467 A.2d 152, 157 (D.C.1983); *Alston v. United States,* 383 A.2d 307, 313 (D.C. 1978) (where witness indicates before trial that he will assert his valid Fifth Amendment privilege and refuse to testify regarding any element of crime charged, defendant not prejudiced by trial court ruling that witness would not be sworn and required to assert privilege regarding specific questions). *See Bowles v. United States,* 142 U.S.App.D.C. 26, 32, 439 F.2d 536, 542 (1970) (en banc), *cert. denied,* 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971) ("[A] witness should not be put on the stand for the purpose of having him exercise his privilege before the jury."); *see also Allen v. State,* 318 Md. 166, 567 A.2d 118, 122 (1989) (under most circumstances it is improper to call a witness before a jury, knowing the witness will invoke the Fifth Amendment privilege, when the purpose is for the effect of requiring the assertion of privilege in the jury's presence).

 Significant policy reasons undergird the approach taken in instances in which the Fifth Amendment privilege is properly invoked. "[T]he jury is not entitled to draw any inference from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense." *Bowles, supra,* 142 U.S.App.D.C. at 31, 439 F.2d at 542. There is a realistic concern that the jury may mistakenly assign the witness' behavior some probative value or draw improper inferences from the refusal to testify at all. *See Burkley v. United States,* 373 A.2d 878, 880 (D.C. 1977); *Bowles, supra,* 142 U.S.App.D.C. at 31–32, 439 F.2d at 541. The jury should not be permitted to speculate about a witness' unwillingness to testify, regardless of the reason. It is appropriate for a judge to instruct the jury not to "draw any inference of any kind" from a witness's refusal to testify. *Burkley,* 373 A.2d at 881; *see also People v. Gearns,* 457 Mich. 170, 577 N.W.2d 422, 437 (1998) ("A defendant may

also request an instruction that no adverse inference should be drawn from a witness' assertion of a testimonial privilege, should that occur in front of the jury."), *overruled by,* but not in relevant part, *People v. Lukity,* 460 Mich. 484, 596 N.W.2d 607, 612 (1999) (overruling harmless error standard adopted in *People v. Gearns, supra*).

## C.

 The policy reasons which govern when the Fifth Amendment privilege is properly invoked are applicable when a privilege of another sort is asserted, and also when there is no valid claim of privilege at all. Putting a witness on the stand in front of the jury for the sole purpose of observing his refusal to testify invites the jury to speculate and draw impermissible inferences. *See Gearns,* 577 N.W.2d at 436 ("The impermissible inference is no less present when the privilege might be invalid."). A witness should be questioned outside the presence of the jury when it is clear that the witness will refuse to testify on the basis of any privilege or reason. *See Hagez v. State of Maryland,* 110 Md. App. 194, 676 A.2d 992, 1005 (1996) (State's unrelenting questioning of witness in presence of jury prejudiced defendant even though witness asserted invalid claim of spousal immunity); *United States v. MacCloskey,* 682 F.2d 468, 478 n. 19 (4th Cir. 1982) ("We think that the best procedure to follow after a witness has improperly invoked the Fifth Amendment or any privilege in such a situation, is to issue an order, outside of the jury's presence, directing him to testify and admonishing him that his continued refusal to testify would be punishable by contempt.") (citations omitted); *cf. Morrison v. United States,* 124 U.S.App.D.C. 330, 365 F.2d 521, 524 (1966) (prior to giving a missing witness instruction to the jury, the trial court, in its discretion, must determine whether it is reasonable for the jury to be permitted to draw an adverse inference from a party's failure to call an available witness).

In the instant case, the trial court, out of the jury's presence, properly called Gibson to the stand on two separate occasions; first to inquire about his knowledge, if any, of the conspiracy investigation against him and then to inquire about his willingness or unwillingness to testify at appellant's trial. Gibson made clear to the court that he had no intention of answering any questions about the March 21, 1997, incident if he was called to the stand before the jury during the trial. Therefore, the court followed the correct course of action when it prevented the witness from being called to the stand in front of the jury for the sole purpose of refusing to answer the government's questions, and in holding the contempt hearing out of the presence of the jury.

Although Gibson did not assert a Fifth Amendment privilege or any valid reason for refusing to testify, it was likely that the jury, upon observing his assertion, would speculate as to possible reasons for Gibson's refusal, including, but not limited to, fear, intimidation, criminal activity on his part, or his previous misstatements about the case. The rationale for not requiring a witness on the stand to assert a Fifth Amendment claim before the jury applies with substantially equal force to cases such as the one before us, where the witness refused to testify simply because he was unwilling to do so.[6]

We hold that appellant was not deprived of his Sixth Amendment right to be confronted with the witnesses against him, and that the trial court chose the correct course when it conducted Gibson's contempt hearing outside the presence of the jury.

*Affirmed.*

---

6. We note that the trial judge's jury instruction—"You may give this evidence [that the court had held Gibson in contempt for refusing to testify] such weight, if any, as in your judgment it is fairly entitled to receive"—was inappropriate and was an unnecessary accommodation of the defense counsel's request to have the court take judicial notice of Gibson's contempt. As we have explained, Gibson's failure to testify had no probative value.