**Randall E. DAVID, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–7227.

Court of Appeals of Alaska.

July 13, 2001.

Margi A. Mock, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Randall E. David was indicted for sexually abusing his stepdaughter. At his trial, David presented the testimony of Dr. David Raskin, a psychologist specializing in the study of human memory and, in particular, the effect that interviewing techniques have on a child's memory.

Dr. Raskin testified that all people, and especially young children, are susceptible to the phenomenon of "suggestion". That is, a person's memories can be distorted if they are asked questions that suggest the truth of particular facts or events. Based on his review of the state trooper interviews of David's stepdaughter, Dr. Raskin concluded that the state troopers had not used good interviewing procedures. Raskin suggested that the state troopers, by their interviewing techniques, had unwittingly encouraged David's stepdaughter to invent accusations of sexual abuse against David, and thus the stepdaughter's testimony might not be trustworthy.

The jury rejected this theory and found David guilty. David now appeals his conviction.

This appeal centers on an incident that occurred during the prosecutor's cross-examination of Dr. Raskin. The prosecutor asked Dr. Raskin if anything had ever happened to him that might cause him to be biased concerning sexual abuse cases. Dr. Raskin answered "absolutely not". The prosecutor then asked, "Have you ever been accused of sexual abuse yourself?" When Dr. Raskin answered "no", the prosecutor pursued the subject by asking Dr. Raskin, "Your daughter has never accused you of ... sexual abuse?" At this point, the defense attorney objected and called for a bench conference.

After the jury left the courtroom, the prosecutor told the trial judge (Superior Court Judge Richard D. Savell) that he wanted to ask Dr. Raskin whether he, himself, had been accused of sexual abuse by one of his children. The prosecutor argued that if Dr. Raskin had ever faced such an accusation, then, regardless of whether the accusation was true or false, this experience might have biased Dr. Raskin in favor of sexual abuse defendants and made Dr. Raskin inherently distrustful of children's reports of sexual abuse. The prosecutor told the court that he had "materials" indicating that Raskin's daughter had accused him of sexual abuse.

Judge Savell allowed the prosecutor to conduct a voir dire examination of Dr. Raskin to investigate this matter. But when the prosecutor asked Dr. Raskin whether his daughter had ever accused him of sexual abuse, Raskin flatly denied this, and he accused the prosecutor of outright fabrication. Judge Savell then asked the prosecutor if he had any extrinsic evidence to support his

allegation, but the prosecutor ducked the question by asking permission to continue his *voir dire* examination of Dr. Raskin. (Unfortunately, Judge Savell never again asked the prosecutor whether he had any evidence to support his allegations.)

The prosecutor next asked Dr. Raskin if he had been sued by a woman in Utah, and if, in that civil suit, the court had sealed certain psychiatric records pertaining to the treatment of Raskin's son. Raskin acknowledged that this was correct. The prosecutor then asked Dr. Raskin if those sealed records contained an allegation that Raskin had sexually abused his son. Raskin responded that the records were sealed, and that they were also protected by the psychotherapist-patient privilege, so he would not reveal their contents.

Judge Savell rejected Raskin's claim of psychotherapist-patient privilege on the basis that Dr. Raskin was not the psychotherapist who treated his son. And Judge Savell concluded that it was irrelevant whether the Utah court had sealed the documents because he did not intend to order "the contents of court-sealed records [to be] opened". Judge Savell then ordered Dr. Raskin to answer whether "there are papers from [his son's psychiatric] treatment, or otherwise" containing an allegation that Raskin had sexually abused one of his children.

Dr. Raskin responded by again asserting that he was not authorized to reveal the contents of the sealed treatment documents:

> *Dr. Raskin:* Your Honor, I think I've [already] answered [your] question. I've told [the prosecutor] that the ... alleged statement by ... my daughter ... accusing me of sexual abuse is absolutely false—and she was furious when she was informed [that someone had attributed such an accusation to her]. I've also told you that I'm not going to disclose information from my son's psychiatric records during treatment. I don't know what else I can say.
>
> ...
>
> *The Court:* Did your son, in any setting, allege that you abused him or your daughter?

...

> *Dr. Raskin:* Your Honor, I cannot disclose to you my son's psychiatric treatment records. ... I cannot do that because he is the only person who can release [those records]. I cannot do that; and you know that, Your Honor.

Confronted with Dr. Raskin's refusal to reveal the contents of the sealed psychiatric treatment records, Judge Savell directed his in-court clerk to bring the jury back to the courtroom. The judge's intention was to have the prosecutor again pose these questions to Dr. Raskin, so that the jury would know that Raskin refused to answer this inquiry.

But when the jury returned to the courtroom and the prosecutor asked Dr. Raskin, "[A]re there records in which a child of yours has accused you of sexually abusing one or more children?", Raskin replied, "I know of no such records. It's a fabrication."

Taken aback by this answer, the prosecutor asked Dr. Raskin, "You were asked these same questions just a minute ago, and you refused to answer. Is that correct?" Raskin replied, "That is not correct. I was not asked that question." The prosecutor then asked Judge Savell for permission to play Raskin's *voir dire* to the jury. Over the defense attorney's objection, Judge Savell declared that Raskin's answers during *voir dire* would be played to the jury because they constituted "a prior inconsistent statement".

The two attorneys then began to dispute whether Dr. Raskin had indeed been asked the same question during the *voir dire*. Judge Savell cut them off and posed his own question to Dr. Raskin:

> *The Court:* Dr. Raskin, are there records—regardless of origin, regardless of truth—arising from statements made by your son that accuse you, directly or indirectly, of sexual abuse of a child of yours, whether son or daughter?
>
> *Dr. Raskin:* I know of no such records in which my son accused me of child abuse.
>
> *The Court:* And my next question to you is: Why did you just a few minutes ago refuse to answer that?

. . .

*Dr. Raskin:* I was asked [a few minutes ago] to disclose information in sealed documents about my son's psychiatric records . . .

*The Court:* That [was] not . . .

*Dr. Raskin:* . . . , which I refused [to do].

*The Court:* That [was] not the question.

*Dr. Raskin:* Yes, that was the question, Your Honor.

*The Court:* Let's go back and just play [the tape of the doctor's *voir dire* ].

The court then went off-record—apparently, so that the tape machine in the courtroom could be used for playing back the recording of Dr. Raskin's *voir dire.* At least three portions of the *voir dire* were played (in the jury's hearing) while Judge Savell and the prosecutor attempted to find the place or places where Raskin refused to answer the same questions just posed by the prosecutor and the judge himself.

When the court finally went back on record, the defense attorney asked for a mistrial:

*Defense Attorney:* Your Honor . . . attempted to find, in the record [of Raskin's *voir dire* ], a certain alleged refusal. And in so doing, [the court] played at least three portions of the [*voir dire* ] which were not the alleged refusal that Your Honor sought. These other matters [that the jury has now heard] are highly prejudicial. . . . These matters should not have been brought before [the jury]. . . . They heard accusations of sexual misconduct on the part of [Dr. Raskin] that were allegedly made by [his] daughter and [his] son, and all of these things are highly improper. They violate Rules of Evidence . . . 403[,] 404[, and] 405. They are allegations of specific acts of bad conduct which should not [have been] permitted to go before the trier of fact. I've made a motion for mistrial before, [and] the court has not ruled on it yet. I renew the motion at this time.
. . .

*The Court:* The court had to play the question [and Dr. Raskin's answer]. And because you kept arguing back [during the *voir dire* examination], there was some argument mixed in [with] the answer, where [Dr. Raskin] says, "I refuse to disclose that." [But] that's what had to be done, because [Dr. Raskin] denied [it] when [the prosecutor] asked if he had just [refused to answer that question]. . . . The alternative was for me to say, "Yes, he did deny it." [*sic: i.e.,* he refused to answer the question] Instead, I let [the jury] hear him refuse to answer. Not deny it; he refused to answer. Your motion is denied.

We conclude that Judge Savell should have granted the requested mistrial. The proceedings we have just described were flawed in four ways.

■ First, the prosecutor flagrantly violated the procedural rule we established in *McBeth v. State*[1] when, without prior warning to the court and the defense attorney, the prosecutor began accusing Dr. Raskin of sexually abusing a child. In *McBeth,* we stated that "the Alaska Rules of Evidence clearly imply that a prior application to the court is necessary before a party can inquire into evidence concerning whether a witness has engaged in criminal conduct."[2] The prosecutor ignored this rule and presented his allegations to the jury before the defense attorney had a chance to litigate whether the prosecutor's inquiry was proper in the first place.

■ Second, the prosecutor never offered any evidence to support his allegations that Dr. Raskin had engaged in sexual abuse of his children. Here, the prosecutor accused a witness of engaging in criminal conduct unconnected to the facts of this case, criminal conduct that could not be inferred from the other evidence before the court. Under these circumstances, Judge Savell should not have allowed the prosecutor to ask questions on this subject in front of the jury unless the prosecutor first provided a good-faith basis for his questions—that is, an offer of proof describing what admissible evidence the

---

**1.** 652 P.2d 120 (Alaska App. 1982).

**2.** *Id.* at 125 n. 7.

prosecutor possessed to support the accusations.[3]

■ To support his questioning of Dr. Raskin, the prosecutor ultimately gave the court a three-page memorandum authored by a paralegal working for the Department of Law. The prosecutor submitted this document *ex parte* because the prosecutor claimed that this memorandum was "work product". This memorandum describes Dr. Raskin's background. It also includes the assertion that, within the sealed court documents from Utah, Dr. Raskin's daughter accused him of sexual abuse. But the memorandum contains no information to verify this accusation. More important, the paralegal who authored the memorandum does not claim first-hand knowledge of what these sealed documents contain, nor does he explain how a paralegal working in Alaska obtained access to documents that were sealed by a Utah court. That is, the memorandum provides no basis for believing that the prosecutor had any admissible evidence to support his assertion that Dr. Raskin's children ever accused him of sexual abuse.

■ Third, leaving aside the prosecutor's lack of a good-faith basis for his questions, information contained in Dr. Raskin's son's psychiatric treatment records was apparently privileged under Alaska Evidence Rule 503.[4] When Dr. Raskin asserted this privilege on behalf of his son, Judge Savell ruled that Raskin had no authority to assert the privilege because Raskin was not the psychiatrist who treated his son. This ruling appears to be wrong. Because Dr. Raskin was the boy's father, he was ostensibly authorized to assert the privilege on behalf of his son—at least when neither his son nor any other person representing his son (an attorney or guardian

*ad litem*) was present to assert or waive the privilege.[5]

■ Fourth, even assuming that Dr. Raskin was not authorized to assert the psychotherapist-patient privilege on behalf of his son, and that Judge Savell could therefore order Raskin to answer questions about the contents of the psychiatric treatment records, it was improper to allow the prosecutor to impeach Dr. Raskin with his earlier refusal to answer questions about those records. In certain circumstances, it is possible that a witness's refusal to answer questions might properly be construed as an implicit admission that the answers would be unfavorable to the witness—and, thus, the witness's refusal might be deemed "inconsistent" with the witness's favorable answers to those same questions on other occasions.[6] But such an inference is impermissible under the circumstances of this case.

During *voir dire*, the prosecutor asked Dr. Raskin whether his son's psychiatric records contained any accusation of sexual abuse. In response, Dr. Raskin raised two plausible reasons why he should not be required to answer questions about the contents of the psychiatric records: first, that the records were protected by the psychotherapist-patient privilege, and second, that the records had been ordered sealed by another court.

Although Judge Savell ultimately rejected both of these arguments and ordered Dr. Raskin to answer the question, Raskin's decision to raise these plausible legal objections was not "inconsistent" with his later testimony that his son had never accused him of sexual abuse. The supposed "inconsistency" exists only if we assume that whenever a witness claims an evidentiary privilege rather than answer a question, the witness is essentially conceding that the answer to the ques-

---

**3.** *See* Alaska Professional Conduct Rule 3.4(e): "A lawyer shall not in trial allude to any matter ... that will not be supported by admissible evidence."

**4.** *See State v. R.H.*, 683 P.2d 269, 274–75 (Alaska App.1984) (holding that, even though AS 47.17.020 obliges mental health care providers to report incidents of sexual abuse, the psychotherapist-patient privilege still applies to allegations of sexual abuse).

**5.** *See* Charles Alan Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* (1989), § 5539, Vol. 25, pp. 301–02.

**6.** Compare *Van Hatten v. State*, 666 P.2d 1047, 1051 (Alaska App.1983), where this court held that when a witness deliberately seeks to avoid testifying by falsely claiming to have no present memory of an event, the witness's assertion can be deemed "inconsistent" with the witness's prior statements describing the event.

tion would be unfavorable to them. This assumption is expressly forbidden by Alaska Evidence Rule 512.

Evidence Rule 512(a) declares that no inference is to be drawn from the fact that a person has claimed the benefit of a privilege not to testify. To enforce this principle, Rule 512(a) forbids both the judge and the attorneys from commenting on a person's claim of privilege. Evidence Rule 512(b) further directs trial judges to conduct jury trials so that, to the extent practicable, no one is forced to claim the benefit of an evidentiary privilege in front of the jury. The commentary to Evidence Rule 512(b) explains the rationale of this rule:

> The value of a privilege may be greatly depreciated by means other than expressly commenting to a jury upon the fact that [the privilege] was exercised. ... [C]alling ... a witness in the presence of the jury and subsequently excusing him after a side-bar conference may effectively convey to the jury the fact that a privilege has been claimed, even though the actual claim was not made in [the jury's] hearing. ... Destruction of the privilege by innuendo can and should be avoided.

Commentary to Evidence Rule 512(b), first paragraph.

■ This rule obviously applies when a witness validly claims a privilege. But the same rule also applies when a witness claims a privilege, the court rejects the claim of privilege and orders the witness to testify, and the witness then obeys the court and answers the disputed questions. Allowing such a witness to be "impeached" with their earlier claim of privilege would undermine the policy of Evidence Rule 512, and it would deter people from claiming the protection of the evidentiary privileges.

The situation in the present case is a little different—for when Judge Savell rejected Dr. Raskin's claims of privilege and ordered Dr. Raskin to answer the question, Dr. Raskin at first continued to assert that he was not legally obliged to answer. Judge Savell then called the jury back to the courtroom so that the jurors could hear Raskin refuse to answer the question.

Had Raskin again refused to answer the prosecutor's question after the jury returned to the courtroom, we would then have to confront the issue of whether a trier of fact can properly draw an adverse inference from a witness's continued refusal to answer questions after the court has rejected the witness's claim of privilege. Courts are split on this issue.[7] But, as it happened, this difficult issue never arose. Instead, when the jury was brought back to the courtroom and the prosecutor posed his question to Dr. Raskin, Raskin answered the question.

It appears that both the prosecutor and Judge Savell became sidetracked at this point. Raskin's decision to answer the prosecutor's question obviously took them by surprise. Moreover, Dr. Raskin would not admit that he had changed his mind about answering the question. Rather, he asserted that he had answered the prosecutor's current question because the prosecutor was no longer asking an objectionable question. At this point, both the prosecutor and Judge Savell embarked on a search of the tape-recorded *voir dire* examination to see if the prosecutor's question had really changed.

This issue was a red herring. It did not make any difference whether the prosecutor's current question was the same as, or different from, the questions posed to Dr. Raskin during the *voir dire*. Even assuming that the prosecutor's question was exactly the same as a question that Dr. Raskin had previously refused to answer, it was still true that (1) Dr. Raskin's previous refusal to answer was based on a plausible claim of privilege, and (2) now that Judge Savell had ordered Raskin to answer the question and had called the jury back to the courtroom, Dr. Raskin answered the question.

7.  *Compare Martin v. United States,* 756 A.2d 901, 905 (D.C.App.2000) (even when a witness refuses to answer questions without any valid privilege, a judge should instruct the jury that they are not to "draw any inference of any kind" from the witness's refusal to testify) *with United States v.* *Brannon,* 546 F.2d 1242, 1247 (5th Cir.1977) (when a witness has no privilege to refuse to answer questions, there is "no error in the court's instructing the jury ... that [these] refusals could be considered in assessing his credibility.")

The prosecutor and Judge Savell were apparently motivated by the belief that, if Dr. Raskin had earlier refused to answer the same question, his refusal said something about his credibility as a witness. But any such belief would again be based on the inference forbidden by Evidence Rule 512—the inference that a claim of privilege can be deemed tantamount to a concession that the answer, if given, would be unfavorable to the witness. The law allows no inference to be drawn from Dr. Raskin's earlier refusal to answer the question. It was therefore irrelevant whether the prosecutor's question was indeed the same one that Raskin had previously declined to answer.

Thus, when the prosecutor and Judge Savell went off-record to search through the tape recording of Dr. Raskin's *voir dire* examination, they were seeking information that was irrelevant to Raskin's credibility as a witness. And, as a result of their search, the jury was exposed to prejudicial information. The jurors heard the prosecutor's various unfounded accusations against Dr. Raskin, and they also heard Dr. Raskin's repeated assertion of his privilege not to answer questions about the contents of his son's treatment records.

Dr. Raskin was the only witness offered by the defense. Thus, the defense case rested heavily on Dr. Raskin's assertion that the state troopers' faulty interviewing techniques might have led David's stepdaughter to make unfounded accusations of sexual abuse. But by the time Dr. Raskin left the stand, the jury had heard about secret court records in which, purportedly, Raskin's own son had accused him of sexual abuse. The jury had also heard portions of the *voir dire* examination in which Raskin refused to answer questions about those records, even after Judge Savell directed him to answer. From this, the jury might improperly infer that Raskin himself was guilty of sexually abusing children and that his testimony on behalf of a sexual abuse defendant should therefore be distrusted.[8]

For these reasons, we conclude that David must be given a new trial.

The judgement of the superior court is REVERSED.

---

8. *See Snyder v. Foote,* 822 P.2d 1353, 1360–61 (Alaska 1991) (holding that improper impeachment of an expert witness in a medical malpractice case was reversible error when the impeachment unfairly cast doubt on the witness's credibility).